UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Julie Dalton,

    Plaintiff,

v.

                                  **MEMORANDUM OPINION AND ORDER**
                                  Civil No. 21-98 (MJD/BRT)

Kwik Trip, Inc.

    Defendant.

---

Patrick W. Michenfelder and Chad Throndset, Throndset Michenfelder, LLC and R. Bruce Carlson, Carlson Lynch, LLP, Counsel for Plaintiff.

Emily E. Kalk, Littler Mendelson P.C., Counsel for Defendant.

---

This matter is before the Court on Defendant's motion for judgment on the pleadings. [Doc. No. 17].

## I.  Background

Plaintiff has a visual disability that qualifies as a disability under the Americans with Disabilities Act ("ADA"). (Comp. ¶ 4.) She alleges that she and other customers with visual disabilities who patronize Defendant's stores do not have the option to withdraw cash in the same private and safe manner available to other customers, because Defendant's stores have point-of-sale ("POS") terminals that require them to rely on a sighted employee or other third party to

1

complete the transaction if they seek to use the cash-back feature.  (Id. ¶¶ 3 and 5.)  Specifically, the POS terminals and associated pin pad at Defendant's stores display words and images that are not otherwise described through audio output, such as announcing the amounts of money that can be selected for cash-back and the amount actually dispensed, therefore Plaintiff cannot use the cash-back feature independently and safely.  (Comp. ¶¶ 19-23.)

Plaintiff has alleged that Defendant has violated the ADA by its failure to offer blind patrons safe, independent, full and equal access to its POS services.  (Id. ¶ 1.)  Plaintiff further alleges, upon information and belief, that Defendant uses the same POS terminal and pin pad in all of its stores.  (Id. ¶ 25.)

## II.     Lack of Standing

In its motion to dismiss, Defendant first argues that this case should be dismissed as Plaintiff has not demonstrated that she has standing to assert the claim at issue.  To show she has standing to sue, Plaintiff must show 1) an injury-in-fact; 2) a causal relationship between the injury and the alleged unlawful act; and 3) the injury will likely be redressed by a favorable decision.  Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1547-48 (2016).  It is Plaintiff's burden to demonstrate

standing at each stage of litigation.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

A claimant experiences an injury-in-fact from a violation of the ADA when she encounters a barrier that interferes with her access to a public place of accommodation, and the barrier affects her "full and equal enjoyment of the facility on account of [her] particular disability."  Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 947 (9th Cir. 2011).  Further,

> [a]n injury-in-fact is a harm that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  The plaintiff must show that he or she "sustained or is immediately in danger of sustaining some direct injury as the result of the challenged ... conduct and [that] the injury or threat of injury [is] both real and immediate ...."  Although plaintiffs need not engage in the "futile gesture" of visiting a building containing known barriers that the owner has no intention of remedying, they must at least prove knowledge of the barriers and that they would visit the building in the imminent future but for those barriers.  Intent to return to the place of injury "some day" is insufficient.

Steger v. Franco, Inc., 228 F.3d 889, 892 (8th Cir. 2000) (internal citations omitted).

Defendant argues that Plaintiff pleaded that she visited the Faribault Kwik Trip store sometime in 2020, and that this store is within the area she typically travels.  (Comp. ¶ 16.)  She did not, however, plead that she intends to return to the Faribault Kwik Trip, or that if she did return, she would seek to obtain cash from the POS terminal cash-back feature.  Furthermore, Plaintiff did not allege

that she visited any other Kwik Trip store yet alleges that upon information and belief all Kwik Trip stores use the same POS terminals.  As a result, she cannot seek injunctive relief for the alleged violations that occurred at stores she never visited, or intends to visit, and she has not demonstrated that other Kwik Trip Stores use the same POS terminals.  See Steger, 228 F.3d at 892.

In response, Plaintiff argues that to demonstrate a "real and immediate threat of future injury by the defendant" the Court should look to the following factors:  "(1) the plaintiff's proximity to the accommodation; (2) the frequency of plaintiff's nearby travel; (3) the plaintiff's past patronage; and (4) the definiteness of plaintiff's plans to return."  Sawczyn v. BMO Harris Bank Nat. Ass'n, 8 F. Supp.3d 1108, 1112 (D. Minn. 2014).  In Sawczyn, the district court found that a plaintiff need only allege that the public accommodation is near enough and convenient enough that he might reasonably be expected to visit it again.  Id.  As to the last factor, the court in Sawczyn held that with regard to visiting an ATM, which are usually spontaneous visits, a plaintiff need not allege when specifically he will return to a particular ATM in order to determine whether plaintiff's professed intent to return is credible and definite.  Id.

Plaintiff has submitted a declaration in which she attests that her family has owned cabins in the Faribault area since 1976 and that she and her husband have owned a seasonal camper in Faribault since 2007.  (Plaintiff Decl. ¶¶ 2 and 3.)  She further states that she has regularly visited the Faribault Kwik Trip over the years, purchasing gas and various other things, and that she will continue to visit the Faribault area as well as the Kwik Trip and will take advantage of the POS cash-back device as soon as she can do so safely and independently.  (Id. ¶¶ 5-7.)  See Steelman v. Rib Crib No. 18, 2012 WL 4026686 (W.D. Mo. Sep. 12, 2012) ("A plaintiff can establish a likelihood of future injury based on her previous visits to a defendant's facility and a present desire to return to the location.") (citing Disabled Patriots of Am., Inc. v. City of Trenton, 2008 WL 4416459 (D.N.J. 2008)).

Accordingly, based on the above, the Court finds Plaintiff has standing to sue the Faribault Kwik Trip Store, given that she has a cabin near the Faribault store, has stated she will likely visit the store again, and like in the Sawczyn case, visits to a convenience store not usually planned in advance.  Plaintiff has not, however, demonstrated standing to sue Kwik Trip Stores she has not visited, and to which she has not demonstrated she will likely visit in the near future.

## III. Whether Plaintiff has Sufficiently Alleged a Discrimination Claim Under the ADA

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Specific prohibitions include:

> **ii)** a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations; **(iii)** a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden . . .

Id. § 12182(b)(2)(A)(ii) and (iii).

A discrimination claim under Title III of the ADA has the following elements: "1) the plaintiff is disabled within the meaning of the ADA, 2) the defendant is a private entity that owns, leases, or operates a place of public

6

accommodation, and 3) the defendant failed to make reasonable modifications that do not fundamentally alter the nature of the public accommodation." Nathanson v. Spring Lake Park Panther Youth Football Ass'n, 129 F. Supp. 3d 743, 747-48 (D. Minn. 2015) (citing Mershon v. St. Louis Univ., 442 F.3d 1069, 1076 (8th Cir. 2006)).

The ADA's statutory scheme requires the Architectural and Transportation Barriers Compliance Board to establish minimum guidelines and requirements for the standards issued under Title III, and that the Department of Justice is responsible for promulgating regulations that include the standards applicable to facilities covered by Title III.  29 U.S.C. § 792(b)(3)(B); 42 U.S.C. § 12186(b)-(c). The ADA Accessibility Guidelines ("ADAAG") "lay out the technical structural requirements of places of public accommodation."  Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1080-81 (9th Cir. 2004).

Defendant argues that because the ADAAG does not contain any governing standards for POS machines or pin pads, Defendant cannot be held liable for not making an element of a facility accessible when there are no standards promulgated for that element.  See Dep't of Justice Americans with Disabilities Act Title III Technical Assistance Manual ("DOJ-TAM III"),  § III-

7

5.3000[1]; Resnick v. Magical Cruise Co., 148 F.Supp.2d 1298, 1305 (M.D. Fla. 2001) (finding that the standards in the ADAAG for new construction and alterations did not apply to cruise ships); White v. Divine Invs., 286 F. App'x 344, 346 (9th Cir. 2008) ("No court has ever held that a Title III discrimination action based on the design of a public accommodation may be maintained in the absence of an ADAAG violation, nor does the text of the statute support such a reading.  In Title III design cases, the ADAAG define discrimination, and absent an ADAAG violation, no discrimination has occurred.").

The Court finds that none of the above authority, which involves new construction or alteration of a public accommodation, supports dismissal of Plaintiff's claim that Defendant failed to provide her with auxiliary aids or services in violation of the ADA.  See Robles v. Domino's Pizza, LLC, 913 F.3d

---

[1] **III-5.3000 Application of ADAAG.** The Department of Justice has adopted the ADA Accessibility Guidelines (ADAAG), issued by the Architectural and Transportation Barriers Compliance Board, as the standard to be applied in new construction. The major provisions of ADAAG are summarized in III-7.0000.

What if ADAAG has no standards for a particular type of facility -- such as bowling alleys, golf courses, exercise equipment, pool lifts, amusement park rides, and cruise ships? In such cases, the ADAAG standards should be applied to the extent possible. Where appropriate technical standards exist, they should be applied. If there are no applicable scoping requirements (i.e. , how many features must be accessible), then a reasonable number, but at least one, must be accessible.

898, 908-09 (9th Cir. 2019) (finding the lack of specific regulations regarding website accessibility does not eliminate the obligation to comply with the ADA or excuse its failure to comply with the mandates of the ADA.)

The ADA regulations set forth numerous examples of auxiliary aids and services, including accessible electronic and information technology or other effective methods of making visually delivered materials available to individuals who are blind or have low vision. 28 C.F.R. § 36.303(b). The term auxiliary aids further includes the acquisition or modification of equipment or devices. Id.[2]

The ADA and its governing regulations also take into consideration the importance of context and privacy concerns when deciding the appropriate nature of auxiliary aids and services:

> The type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place. A public accommodation should consult with individuals with disabilities whenever possible to determine what type of auxiliary aid is needed to ensure effective communication, but the ultimate decision as to what measures to take rests with the public

---

[2] The DOJ noted in promulgating the rules implementing Title III that "[i]t is not possible to provide an exhaustive list (of examples of auxiliary aids and services), and such an attempt would omit new devices that will become available with emerging technology." 28 C.F.R. Part 36, App. C (emphasis added).

accommodation, provided that the method chosen results in effective communication. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability.

Plaintiff is understandably concerned about her financial security if she is to have an employee or other third person assist her with the cash-back option on the POS device at Defendant's store. In addition, Plaintiff has also set forth in her declaration that the availability of an ATM is not a sufficient alternative, as the use of an ATM charges a fee and requires Plaintiff to go to a separate location in the store. Defendant argues these facts are not relevant to the analysis, as a sighted person also incurs ATM fees. However, a sighted person is not forced to choose between an ATM and a POS terminal to get cash back in a secure manner. Accordingly, the Court finds that Plaintiff has sufficiently alleged a cognizable claim that Defendant has violated the ADA by its failure to offer blind patrons safe, independent, full and equal access to its POS services.

**IT IS HEREBY ORDERED** that Defendant Kwik Trip, Inc.'s Motion for Judgment on the Pleadings [Doc. No. 17] is **GRANTED** to the extent that

Plaintiff seeks relief against Kwik Trip stores other than the Faribault store, and

**DENIED in all other respects.**


Date:   October 5, 2021                                          s/Michael J. Davis
                                                                                          Michael J. Davis
                                                                                          United States District Court